**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **SUMMIT 6 LLC,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| **v.** § | **Civil Action No. 3:11-cv-367-O** |
| § | |
| **RESEARCH IN MOTION** § | |
| **CORPORATION, et al.,** § | |
| § | |
| **Defendants.** § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court are Samsung Defendants' Motion for  Judgment as a Matter of Law ("JMOL") 1: Non-Infringement—No Acts of Direct or Indirect Infringement (ECF No. 611); Samsung Defendants' Motion for JMOL 2: Non-Infringement—No Literal Infringement (ECF No. 622); Samsung Defendants' Motion for JMOL 3: Invalidity (ECF No. 619); Samsung Defendants' Motion for JMOL 4: Damages (ECF No. 614); Plaintiff's JMOL Regarding Inequitable Conduct (ECF No. 565); Samsung Defendants' Motion to Compel Testimony and Communications with Fenwick & West Based Upon Waiver and Brief and Appendix in Support (ECF No. 588); Samsung Defendants' Motion to Strike Plaintiff's Trial Exhibit PX-1003 (ECF No. 603); Samsung Defendants' Post Trial Brief Regarding Unenforceability of the '482 Patent Due to Inequitable Conduct (ECF No. 617); Plaintiff's Motion for a Compulsory Royalty (ECF No. 568); and Plaintiff's Motion for Pre-Judgment Interest and Post-Judgment Interest (ECF No. 609).[1]  For the reasons stated below, Plaintiff's Motion for Pre-Judgment Interest and Post-

---

[1]  Also before the Court are the corresponding briefs and appendices in support of each of these motions as well as any responses and replies.  Although not listing each filing by name and ECF number, the Court reiterates that it has carefully considered each pleading the parties have filed.

Judgment Interest (ECF No. 609) is **GRANTED**; Samsung Defendants' Motion for JMOL 1: Non-Infringement—No Acts of Direct or Indirect Infringement (ECF No. 611) is **GRANTED in part** and **DENIED in part**; Samsung Defendants' Motion to Strike Plaintiff's Trial Exhibit PX-1003 (ECF No. 603) is **DENIED as moot**; and all other motions are **DENIED**. Furthermore, this opinion sets for the Court's findings of fact and conclusions of law regarding Samsung Defendants' equitable defense of inequitable conduct.

## I.    BACKGROUND

The owner of the patent-in-suit and Plaintiff in this case is Summit 6, LLC, which markets itself as a developer and licensor of technology that "simplifies and streamlines the collection and redistribution of rich content." *See* Summit 6 Overview, www.summit6.com (last visited June 25, 2013). The patent in this case, U.S. Patent No. 7,765,482 ("the '482 patent"), is entitled "Web-based Media Submission Tool," and relates to "the handling, manipulation and processing of digital content." *See* U.S. Patent No. 7,765,482 col. 1 l. 11–12 (filed October 8, 2004).

Before the United States Patent and Trademark Office ("PTO") issued the patent-in-suit and while the application was pending, Summit 6[2] wanted to expand its patent portfolio. Thus, Summit 6 began exploring options to purchase patents from other companies around late 2005 and early 2006. To explore various options and potentially purchase patents, a company named Minotaur Media Management LLC ("Minotaur") was created. One of Summit 6's board members, Peter Yoakum, also served on the board of Minotaur and spearheaded Minotaur's

---

[2] In 2006, Summit 6, LLC did not yet exist and its predecessor was called AdMission Corp. For simplicity, the Court will refer to any relevant predecessor as "Summit 6" or "Plaintiff" throughout this order, making distinctions only when necessary.

mission to acquire patents with similar technology to Summit 6.  Yoakum spoke with a Canadian company, Point2 Technologies, Inc. ("Point2"), about potentially acquiring one of Point2's patents, U.S. Patent No. 6,721,802 ("the '802 patent"), which had a filing date of August 12, 1999.  Point2 offered a service on its website called "Heavy Equipment Exchange" that allowed sellers of construction equipment to place advertisements online.  The '802 patent covered the technology in Point2's Photo Upload Facility ("PUF"), which was a program the company created to simplify the process of adding images to these online advertisements.  Before buying the patent and during due diligence, Summit 6 learned that Point2 may have put the PUF on its website as early as 1997 or early 1998.  These Point2 documents and discussions with Point2 employees allegedly convinced Summit 6 that there had been a public disclosure bar.  In the end, the deal did not go through and Summit 6 did not acquire the '802 patent from Point2.

On July 27, 2010, the PTO issued the '482 patent, listing a Summit 6 employee Scott Lewis as an inventor, and the patent was then assigned to Summit 6.[3]  On February 23, 2011, Summit 6 filed suit against Samsung Electronics Co., Ltd. and Samsung Telecommunications America, LLC (collectively, "Samsung") alleging infringement of the '482 patent.  Samsung's devices are able to send images from one device to another through multimedia messaging service ("MMS") messages.  To send the image, Samsung's MMS software resizes and alters these images in the MMS message.  Summit 6 alleges Samsung's image-resizing software infringes the '482 patent.

At the summary judgment phase, the Court granted in part and denied in part Samsung's Motion for Summary Judgment of Noninfringement.  *See* Mem. Op. & Order, Feb. 6, 2013, ECF

---

[3] This patent is a continuation of Summit 6's earlier 6,895,557 patent, which was filed July 21, 1999. Thus the '482 patent is entitled to that earlier priority date.  *See* 35 U.S.C. § 120.

No. 510.   The Court found there was a genuine issue of material fact as to whether Samsung's products literally infringed the '482 patent, thus denying Samsung's motion in part.  *Id.* at 4.  The Court granted Samsung's motion for summary judgment on the doctrine of equivalents based on prosecution history estoppel.  *Id.* at 12.  Accordingly, Summit 6 could only proceed at trial on its claim for literal infringement of the '482 patent.

The Court conducted a jury trial in March 2013.   Summit 6 alleged that Samsung's products infringed the '482 patent, specifically claims 40, 44, 45, 49, and 49, which are all dependent on claim 38.   Claim 38 is reproduced here:

> A computer implemented method for pre-processing digital content in a client device for subsequent electronic distribution, comprising:
>
> a. initiating, by said client device, a transfer of digital content from said client device to a server device, said digital content including one or more of image content, video content, and audio content;
>
> b. pre-processing said digital content at said client device in accordance with one or more pre-processing parameters, said one or more pre-processing parameters being provided to said client device from a device separate from said client device, said one or more pre-processing parameters controlling said client device in a placement of said digital content into a specified form in preparation for publication to one or more devices that are remote from a server device and said client device; and
>
> c. transmitting a message from said client device to said server device for subsequent distribution to said one or more devices that are remote from said server device and said client device, said transmitted message including said pre-processed digital content.

'482 Patent at col. 13 l. 56–col. 14 l. 14.   Based on the Point2 materials,[4] Samsung asserted a defense that the '482 patent was invalid because the PUF was on sale and in public use in the

---

[4]   The Court will use "Point2 materials" to describe the documents that Summit 6 discovered during the due diligence related to acquiring the '802 patent as well as the other evidence Samsung disclosed at trial. These include, for example, the Point2 PUF code, the DemoCD, archived web pages, and emails between Yoakum and Point2's employees and attorneys.

United States at least one year before the '482 patent's priority date of July 21, 1999.

The jury rendered a verdict that the '482 patent was not invalid, that Samsung infringed all five of the asserted claims of the '482 patent, awarded Summit 6 $15 million in damages, and wrote "lump sum" under that amount.[5]   *See* Jury Charge 46–47, ECF No. 562.   The Court subsequently held a separate bench trial on inequitable conduct in April 2013.   Instead of making closing arguments, the parties submitted briefing to the Court on the issue of inequitable conduct.   At the conclusion of the bench trial, the Court also ordered both parties to file any motions for judgment regarding either the jury trial or bench trial.   Accordingly, all remaining issues from the jury trial, the bench trial, and any subsequent motions are addressed in this Order.

## III.   JUDGMENT AS A MATTER OF LAW

### A.   Legal Standard

"The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie."   *Summit Tech., Inc. v. Nidek Co.*, 363 F.3d 1219, 1223 (Fed. Cir. 2004).   Rule 50 of the Federal Rules of Civil Procedure governs motions for judgment as a matter of law in jury trials.   *See* Fed. R. Civ. P. 50; *see also Weisgram v. Marley Co.*, 528 U.S. 440, 448-49 (2000).   Rule 50(a) "authorizes the entry of judgment as a matter of law '[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'"   *See*

---

[5]   The jury charge asked two separate questions of liability based on the two Samsung Defendants. The jury found infringement of claims 40, 44, 45, 46, and 49 as to both Samsung Electronics Co., Ltd. in Korea and Samsung Telecommunications America, LLC.

*James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (alteration in original) (quoting Fed. R. Civ. P. 50(a)).  "It allows the trial court to remove cases or issues from the jury's consideration 'when the facts are sufficiently clear that the law requires a particular result.'"  *Weisgram*, 528 U.S. at 448 (quoting 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2521, at 240 (2d ed. 1995)).  "If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion."  Fed. R. Civ. P. 50(b).

"[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record."  *Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 150 (2000).  "In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  *Id.* (citing *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–55 (1990)).  "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inference from the facts are jury functions, not those of a judge.'"  *Id.* at 150–51 (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)).  "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe."  *Id.* at 151.

"A motion for judgment as a matter of law is appropriate if, after considering the evidence presented and viewing all reasonable inferences in the light most favorable to the nomovant, the facts and inferences point so strongly in favor of the movant that a rational jury could not arrive at a contrary verdict."  *Murray v. Red Kap Indus., Inc.*, 124 F.3d 695, 697 (5th Cir. 1997).  "If there is substantial evidence of such quality and weight that reasonable and

6

fair-minded jurors might reach a different conclusion," then judgment as a matter of law is not appropriate. *Id.* "We must remember, however, that evidence sufficient to support a jury verdict must be *substantial* evidence." *Guile v. United Sates*, 422 F.3d 221, 227 (5th Cir. 2005). "[T]he party opposing the motion must at least establish a conflict in substantial evidence on each essential element of [his] claim." *See Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 583 (5th Cir. 2002) (citing *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc)). An inference that "would be 'mere speculation and conjecture' . . . is not sufficient to support a jury verdict." *Guile*, 422 F.3d at 226 (quoting *Anthony*, 284 F.3d at 583-84). "[T]he 'standard of review with respect to a jury verdict is especially deferential.'" *Lubke v. City of Arlington*, 455 F.3d 489, 494 (5th Cir. 2006) (quoting *Brown v. Bryan Cnty.*, 219 F.3d 450, 456 (5th Cir. 2000)).

### B. JMOL 1:Non-Infringement—No Acts of Direct or Indirect Infringement

Samsung moves for judgment as a matter of law on the basis that it did not directly or indirectly infringe the '482 patent. *See* Defs.' Mot. JMOL Direct/Indirect Infringement, ECF No. 612. Samsung alleges (1) there is insubstantial evidence of direct infringement by either Samsung Electronics Co., Inc. ("SEC") or Samsung Telecommunications America, LLC ("STA"); and (2) neither SEC nor STA indirectly infringed through (a) inducement, or (b) contributory infringement. *Id.* If substantial evidence supports any of the three legal theories—direct, contributory, or induced infringement—against each defendant, then the verdict must be upheld. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850 (Fed. Cir. 2010). The Court concludes that there is substantial evidence supporting the jury's verdict of indirect infringement.

#### 1. Direct Infringement

Samsung alleges that there is no evidence that anyone at SEC, a company in Korea, or

STA ever practiced all of the method steps in the United States. *See* Defs.' Mot. JMOL Direct/Indirect Infringement, ECF No. 612. Summit 6 responds that a Federal Circuit case, *SiRF Technology, Inc. v. ITC*, "stand[s] for the proposition that a defendant directly infringes a method claim when software in the defendant's product practices the claim when a customer later uses the product." Pl.'s Resp. Defs.' Mot. JMOL Direct/Indirect Infringement 8, ECF No. 4 (citing 601 F.3d 1319 (Fed. Cir. 2010)). In other words, when a defendant creates software that automatically performs all the steps in a method, that defendant directly infringes even if the defendant is not using the device that contains the software. *See id.* Samsung contends that this case was exclusively about joint infringement and that in *SiRF* the complainant accused the respondent's "InstantFix service" of infringement, which was provided by respondent's own servers that were located in the United States. Defs.' Reply Pl.'s Resp. Defs.' Mot. JMOL Direct/Indirect Infringement 2, ECF No. 648. Essentially, Samsung argues that under *SiRF* a defendant must still perform the method in order to be liable. *See id.* According to Samsung, unlike the servers in *SiRF* that were still under the respondent's control and performing the method steps, neither SEC nor STA is in control or possession of the Samsung devices when they are sending these MMS messages. *See id.* Thus, Samsung argues, neither SEC nor STA can be liable for direct infringement because neither has practiced the claims in the United States, even if their customers are practicing the claims by using Samsung's software.[6] *See id.*

---

[6] Samsung also argues that even if Summit 6 is correct about the *SiRF* proposition, it is irrelevant because the claims require end-user conduct, and thus neither defendant could never practice all the steps in the method themselves. *See* Defs.' Reply Pl.'s Resp. Defs.' Mot. JMOL Direct/Indirect Infringement 4, ECF No. 4. This case has never dealt with the issue of divided infringement. To assert this new theory without sufficient argument, without giving Summit 6 a chance to respond, and at this stage in the litigation—after the jury finding of infringement—is improper. Accordingly, the Court does not address the issue of divided infringement.

The Court does not find Summit 6's argument based on *SiRF* persuasive, and instead follows Federal Circuit case law requiring that defendant itself must infringe a method claim, rather than simply create software that infringes.  *See Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1359–60 (Fed. Cir. 2012) (finding that plaintiff failed to offer evidence that defendant itself infringed a method claim focusing on whether Apple employees had themselves used or tested the software that allegedly practiced the method claim); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009) ("Claims 19 and 21 are method claims; thus, Microsoft's sales of its software alone cannot infringe the patent. Infringement occurs only when someone performs the method using a computer running the necessary software. Thus, Microsoft can only be liable for infringement of claims 19 and 21 as a contributor and/or an inducer.").  Based on the aforementioned precedent, the Court finds that neither SEC nor STA is directly liable simply because they created the software that allegedly performs the method claims of the '482 patent.

Again, Summit 6 may show direct infringement by SEC or STA if an employee practiced the method claims in the United States, for example, by testing the product.  Plaintiff points to a scintilla of evidence in the record, that Samsung's employee Paul Chapple sent an MMS message with a photo on a Samsung accused device.  Even though a "finding of infringement can rest on as little as one instance of the claimed method being performed," the Court does not find this amounts to substantial evidence to support a finding of direct infringement by either STA or SEC.  *See Lucent*, 580 F.3d at 1317.  Summit 6 also points to evidence showing "billions of infringing MMS texts, with pictures, being pre-processed and transmitted using Samsung devices in the United States."  While this can be used to show direct infringement by customers, it does not show that STA or SEC directly infringed.  Accordingly, the Court finds that Summit

9

6 has failed to show that either STA or SEC directly infringed the method claims.

### 2.  Indirect Infringement

Samsung also alleges that no substantial evidence exists that it indirectly infringed—either by inducement or contributory infringement—the claims of the '482 patent.[7] Defs.' Mot. JMOL Direct/Indirect Infringement 9–17, ECF No. 612.  The Court will address each theory in turn.

#### a.  Inducement

Samsung argues it is entitled to judgment as a matter of law that there was no induced infringement because Summit 6 failed to present substantial evidence that Samsung either possessed the specific intent to encourage another's infringement or knew the induced acts constituted patent infringement.  Defs.' Mot. JMOL Direct/Indirect Infringement 9–15, ECF No. 612.  The Court disagrees.  A defendant can be held liable for inducing infringement if it can be shown that (1) it knew of the plaintiff's patent, (2) it induced the performance of the steps of the

---

[7]  The Court notes that in order to find indirect infringement, there must be a finding of underlying direct infringement.  *See* 35 U.S.C. § 271(b), (c); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement, though the direct infringer is typically someone other than the defendant accused of indirect infringement.").  This does not require a finding that the defendant itself directly infringed, but only that the patent was directly infringed, and in this case that all of the steps of the method claim were performed.  *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1308–09 (Fed. Cir. 2012), *cert. dismissed*, 133 S. Ct. 1520 (2013) and *cert. dismissed*, 133 S. Ct. 1521 (2013) ("Requiring proof that there *has been* direct infringement as a predicate for induced infringement is not the same as requiring proof that a single party would be *liable* as a direct infringer.").  Neither party raises this issue in their briefing.  However, for completeness, the Court finds that there is sufficient evidence to find underlying direct infringement, for example, through the evidence of the billions of MMS messages with images sent in the United States, instruction manuals explaining to users how to send an image from their devices, and Dr. Jones's testimony that once a user attaches a image, the software automatically resizes the images and thus satisfies all the method claims.  *See Lucent*, 580 F.3d at 1318–20 (finding evidence of sales of the accused products and dissemination of instruction manuals for the accused products sufficient to find it is "more like than not one person somewhere in the United States had performed the claimed method using the [defendant's] products").

method claimed in the patent, and (3) those steps were performed. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1318 (Fed. Cir. 2012), *cert. dismissed*, 133 S. Ct. 1520 (2013) and *cert. dismissed*, 133 S. Ct. 1521 (2013). Induced infringement also "requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011). The Federal Circuit has further explained the test: "[I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Akamai*, 692 F.3d at 1308 (alteration in original) (quoting *DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc)).

Here, the Court finds there is sufficient evidence to support a finding of induced infringement. First, there is substantial evidence that Samsung knowingly induced infringement, or, in other words, that Samsung knew of both the '482 patent and the infringing nature of the MMS image-resizing software. At the very least, Samsung knew of the '482 patent by the time Summit 6 filed the complaint. Also, the jury could reasonably rely on Dr. Jones's testimony that Samsung knew or should have known that their instructions—for example, those in Samsung's user manuals—would result in infringement of the '482 patent. *Advanceme Inc. v. RapidPay, LLC*, 509 F. Supp. 2d 593, 607 (E.D. Tex. 2007), *aff'd*, 277 F. App'x 1023 (Fed. Cir. 2008) ("The requisite showing of intent is a 'showing that the alleged infringer's actions induced infringing acts and that he *knew or should have known* his actions would induce actual infringements.' Courts have construed this to mean actual or constructive knowledge of the patent." (emphasis added) (quoting *DSU Med.*, 471 F.3d at 1304)). Second, there is substantial evidence for the jury to find that Samsung possessed a specific intent to cause direct infringement by the consumer. Instructing how to engage in an infringing use constitutes evidence of a specific intent to encourage another's infringement. *See i4i*, 598 F.3d at 851–52;

11

*Lucent*, 580 F.3d at 1322–23; *Advanceme*, 509 F. Supp. 2d at 607.   Here, Summit 6 introduced into evidence Samsung's user manuals that taught its customers how to attach an image to an MMS message.   Summit 6's expert, Dr. Jones, testified that using the directions in the instruction manuals would result in infringement.   Based on this evidence, the jury could reasonably conclude that Samsung had an intent to induce infringement.   Accordingly, there is substantial evidence for the jury to conclude that Samsung is liable for induced infringement.

Because the Court has found substantial evidence supports a finding of induced infringement, it need not determine whether there is sufficient evidence for a finding of contributory infringement.   *See i4i*, 598 F.3d at 850 (finding that the verdict be upheld if substantial evidence supports any of the legal theories of infringement).   Nevertheless, the Court will make this determination for completeness and as an alternative basis for upholding the jury's finding of infringement.   The Court turns to Samsung's arguments regarding contributory infringement.

### b. Contributory Infringement

Samsung argues there is no evidence of contributory infringement because the allegedly infringing "component or part" had significant non-infringing uses.   Defs.' Mot. JMOL Direct/Indirect Infringement 15–17, ECF No. 612.   "In order to succeed on a claim of contributory infringement . . . plaintiff must show that defendant 'knew that the combination for which its components were especially made was both patented and infringing' and that defendant's components have 'no substantial non-infringing uses.'" *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005) (quoting *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004)).   Samsung argues that whether the correct component or part is the entire device, the camera, or the MMS messaging

feature, all have "substantial non-infringing uses" and thus Samsung cannot be liable for contributory infringement. Defs.' Mot. JMOL Direct/Indirect Infringement 15–17, ECF No. 612. Summit 6 argues that the correct component or part is Samsung's specific image-resizing software replicating the elements of the '482 patent, which does not have a non-infringing use. Pl.'s Resp. Defs.' Mot. JMOL Direct/Indirect Infringement 15, ECF No. 636. The Court agrees with Summit 6.

In assessing whether the correct component or part has substantial non-infringing uses, the Federal Circuit focuses on the accused infringing feature, rather than the overall product. *See Lucent*, 580 F.3d at 1320 (focusing on the date-picker rather than the larger software package of Microsoft Outlook); *i4i*, 598 F.3d at 849 (focusing on the custom XML editor rather than all of Microsoft Word). The same reasoning applies here. Thus, the Court focuses on the specific feature of Samsung's MMS software that practices the patented method—the image-resizing software—rather than the overall accused product or the MMS messaging feature as a whole. There was substantial evidence before the jury that this specific feature of the MMS software had no substantial non-infringing features. Indeed, each time this piece of the software was used it performed the patented method. Accordingly, the Court concludes that there was substantial evidence for the jury to find contributory infringement by the preponderance of the evidence.

Based on the foregoing, the Court finds that Samsung is (1) entitled to JMOL that it is not liable for direct infringement of the '482 patent, and (2) its JMOL that it is not liable for induced or contributory infringement is denied. Accordingly, Samsung's JMOL on direct and indirect infringement is **GRANTED in part** and **DENIED in part**.[8]

---

[8] The Court notes that its finding that neither STA nor SEC directly infringed does not affect the final jury verdict for two reasons. First, the Court found that both STA and SEC are indirectly liable under theories

### C.  JMOL 2: Non-Infringement—No Literal Infringement

Samsung argues it is entitled to judgment as a matter of law of no literal infringement because "no accused product literally performs the pre-processing 'in preparation for publication' as required by all asserted claims of the '482 patent." Defs.' Mot. JMOL Literal Infringement 1, ECF No. 623.  The Court construed "publication" to mean "making publicly available and "pre-processing" to mean "modifying the [media object data/digital content data], as opposed to data merely associated with the [media object/digital content], at the client or local device in preparation for transmission to a remote device." *See generally* Claim Construction Order, May 21, 2012, ECF No. 168.  Samsung argues that the accused feature only pre-processes an image to resize it below the maximum transmission parameters set by the carrier, and thus the pre-processing only occurs in preparation for transmission. *Id.* at 4–5.  Samsung argues that because the pre-processing is generic to all MMS transmissions and has nothing to do with any publication, it does not practice all the claim limitations as a matter of law. *Id.* at 5.  The Court disagrees with Samsung's arguments.  The jury concluded that Samsung's accused products infringed the '482 patent and that fact finding is supported by substantial evidence.

"To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995).  Although "in preparation for transmission" and "in preparation for publication" are two distinct claim requirements, that does not preclude the accused products' action of "pre-processing" from simultaneously preparing the image for two different purposes,

---

of inducement and contributory infringement; thus, the jury's verdict finding them each liable for infringement stands.  Second, the damages award is unaffected because a party found liable for indirect infringement is liable for all damages associated with the direct infringement. *See Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 500 (1964).

14

namely transmission and publication.   Infringement, and whether the accused product meets all the claim limitations, is a question of fact for the jury to decide.   *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1334 (Fed. Cir. 2008).   The jury had substantial evidence to determine that this pre-processing occurred in preparation for publication, or in preparing for making publicly available.   For example, Dr. Jones, relying on Samsung's code, testified that the Samsung devices put images in a format that permits reception and subsequent publication by other devices and websites.   *See nCube Corp. v. Seachange Int'l, Inc.*, 436 F.3d 1317, 1323 (Fed. Cir. 2006) (declining to "second guess" the jury's determinations in finding literal infringement when an expert testified that an element of the claim was met and supported his opinion by relying on defendant's technical documents).   Even though Samsung's expert, Dr. Sacerdoti, testified to the contrary, "[i]t is decidedly the jury's role to evaluate the weight to be given to the testimony of dueling qualified experts."   *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1306 (Fed. Cir. 2011) (citing *i4i*, 598 F.3d at 856).   Thus, the Court does not make its own credibility determination.

Samsung argues that Dr. Jones's testimony amounts to no evidence because it was conclusory.   The Court disagrees.   Dr. Jones's testimony was not conclusory as to whether the accused products met the "in preparation for publication" claim limitation because he pointed to and identified specific parts of the code that could satisfy this claim limitation.   *See generally Paradox Sec. Sys., Ltd. v. ADT Sec. Servs., Inc.*, 388 F. App'x 976 (Fed. Cir. 2010) (unpublished) (affirming JMOL that accused products did not infringe because the expert testimony presented only conclusory statements and pointed to no structure introduced into evidence that met the claim limitation).   Importantly, Dr. Jones showed the jury the MMS source code and described certain pre-processing parameters such as the maximum message sizes

15

allowed by carriers such as ATT and T-Mobile as well as maximum image height and width parameters.  Even if these parameters were also used to prepare the image to be transmitted across the carrier networks, the Court cannot say that this precludes it from being evidence that these parameters were used to also prepare the image for publication, or making publicly available.  That determination was for the jury.  *See Uniloc*, 632 F.3d at 1306.  Based on a review of the record as a whole, the Court cannot say that there was no substantial evidence to support the jury's finding of infringement.  Accordingly, the Court **DENIES** Samsung's motion for judgment as a matter of law of no literal infringement.

### D.  JMOL 3: Invalidity

Samsung moves for judgment as a matter of law that the asserted claims of the '482 patent are invalid due to anticipation and the public use statutory bar.  *See generally* Defs.' Mot. JMOL Invalidity, ECF No. 620.  An inventor is not entitled to a patent if "the invention was . . . in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."  35 U.S.C. § 102(b).  Anticipation occurs if "the invention was described in . . . a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent.  *Id.* § 102(e).  Anticipation and the public use statutory bar require that each and every limitation of the claimed invention is present in the prior art.  *Schering Corp. v. Geneva Pharm., Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003).  Applying this legal standard to the record in this case, the Court concludes that the jury had a legally sufficient evidentiary basis for finding the asserted claims of the '482 patent are not invalid due to anticipation or the public use statutory bar.

Samsung argues that a reasonable jury could only find for Samsung on the issue of invalidity.  Specifically, Samsung argues that Claims 38, 40, 44, 45, 46, and 49 are (1)

16

statutorily barred by the Point2 PUF, which Samsung asserts was in use and on sale in the United States before July 21, 1998, one year before the effective filing date of the '482 patent, and (2) anticipated by U.S. Patent No. 6,038,295 (the Mattes patent), filed June 17, 1997.  The Court disagrees and finds that the jury could have reasonably concluded that the Point2 PUF was not in public use or on sale in the United States before July 21, 1998, and thus did not qualify as prior art.  Also, the Court finds that the jury could have reasonably concluded that the Mattes patent, although undisputably published before the earliest conception date of the '482 patent, did not disclose each and every limitation of the claimed invention.  Thus, Samsung fails to meet its burden that "'there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did.'"  *See Hiltgen v. Sumrall*, 47 F.3d 695, 700 (5th Cir. 1995) (quoting Fed. R. Civ. P. 50(a)(1)).

Having carefully considered the record and the parties' arguments, the Court concludes that the jury had a legally sufficient evidentiary basis for failing to find the asserted claims of the '482 patent invalid due to anticipation of the Mattes patent or due to the public use statutory bar from the Point2 materials.  Accordingly, the Court **DENIES** Samsung's motion for JMOL on invalidity.

### E.  JMOL 4:  Damages

Samsung moves for judgment as a matter of law on the basis that any damages should be limited to $1.5 million.  Defs.' Mot. JMOL Damages, ECF No. 615.  Defendant argues that the evidence does not support the jury verdict of $15 million because (1) Plaintiff's expert, Mr. Benoit, used a flawed analysis for his damage calculation and (2) the jury relied on improper settlement licenses that should not have been admitted.  *Id.* at 7–15, 15–20.  Defendant asserts that once the Court properly "excise[s] inadmissible evidence" such as Benoit's analysis and the

17

settlement licenses, then the $15 million jury award is not supported by legally sufficient evidence and should be limited to $1.5 million.[9]  *Id.* at 15–16 (quoting *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 193 (5th Cir. 2006)).  The Court disagrees and finds the damages award is supported by a sufficient amount of evidence.

### 1.  Benoit's Analysis

Defendant argues that Benoit's analysis is flawed because he (1) used the camera component, (2) relied on surveys, and (3) used the Nash Bargaining Solution ("NBS").[10]  *Id.* 7–14.  Other than argument, Samsung does not direct the court to any cases where reliance on these methods is flawed.  Indeed, the Court does not find these steps to be "flawed and unreliable," and thus Benoit's analysis constitutes acceptable evidence on which the jury could rely for its damages calculation.  The Court will address each objection in turn.

First, Samsung argues that Benoit's analysis fails to determine a royalty rate that reflects the value of the accused resizing software component, mainly because his analysis began by using the camera component, which is a not a patent-practicing component of the device.  *Id.* When performing a running royalty analysis, a royalty rate must "account[] for the proportion of the base represented by the infringing component or feature."  *Lucent*, 580 at 1339.  There is no

---

[9]  Summit 6 argues under *Versata Software v. SAP Am., Inc.*, Nos. 2012–1029, 2012–1049, 2013 WL 1810957 (Fed. Cir. May 1, 2013) that Samsung's JMOL is an inappropriate way to argue about the admissibility of evidence.  Pl.'s Resp. Defs.' Mot. JMOL Damages 1, ECF No. 630.  Even if Summit 6 is correct, the Court will engage in this analysis for the sake of completeness and in following the example of other district courts.  *See, e.g.*, *i4i Ltd. P'ship v. Microsoft Corp.*, 670 F. Supp. 2d 568, 589–593 (E.D. Tex. 2009), *aff'd*, 598 F.3d 831 (Fed. Cir. 2010) (analyzing the admissibility of the evidence when defendant moved for JMOL on the issue of damages contending that plaintiff presented legally insufficient evidence because the evidence was inherently unreliable and should have been excluded).

[10]  The Court notes that Samsung made these same arguments in its *Daubert* motion to exclude Benoit's testimony.  *See* Defs.' *Daubert* Mot. Strike Benoit, ECF No. 404.  The Court disagrees with Samsung's arguments here for the same reasons it disagreed with its *Daubert* motion.

18

requirement that a component that an expert relies on in calculating the royalty *rate* must be a patent-practicing unit of the accused device.[11]   The steps in Benoit's analysis deal with the correct apportionment to determine the value of the image resizing functionality.   The Court finds no error in beginning the royalty rate calculation with the camera component.   *See Lucent*, 580 F.3d at 1336 ("[O]n post-trial JMOL motions, district court judges must scrutinize the evidence carefully to ensure that the 'substantial evidence' standard is satisfied, while keeping in mind that a reasonable royalty analysis 'necessarily involves an element of approximation and uncertainty.'" (quoting *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995))).

Also, Samsung argues it was improper for Benoit to use the entire device for his royalty base, which Samsung alleges improperly invokes the entire market value rule.   Defs.' Mot. JMOL Damages 9, ECF No. 615.   The Court finds Samsung's argument that Benoit improperly uses the entire market value rule unfounded.   The Federal Circuit has made clear that when performing a running royalty calculation, as Benoit did at trial, using the entire product as the base is acceptable.   *See Lucent*, 580 F.3d at 1338–39 ("[C]ourts must nevertheless be cognizant of a fundamental relationship between the entire market value rule and the calculation of a running royalty damages award.   Simply put, the base used in a running royalty calculation can always be the value of the entire commercial embodiment, as long as the magnitude of the rate is within an acceptable range (as determined by the evidence).").   Also, only the entire device itself is capable of performing the image resizing—no other, smaller component can perform this

---

[11]   This is separate from the requirement that any royalty *base* must be the "smallest salable patent-practicing unit."   *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012).   The base that Benoit used was the entire Samsung device itself.   Because only the device can practice the patent and no other smaller component is even able to practice the patent, Benoit properly used the entire device was the "smallest salable patent-practicing unit."

action.  Thus, using the entire device as the royalty base is proper under *LaserDynamics* because the device itself is the "smallest patent-practicing unit."  *See LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012).  Accordingly, the Court finds Benoit's royalty rate and royalty base determinations are proper.

Second, Samsung asserts Benoit's reliance on market research surveys based on usage of cell phone cameras and other non-infringing features is improper because they are not tied to the value of the allegedly infringing feature—the image-resizing software.  Defs.' Mot. JMOL Damages 9–10, ECF No. 615.  After reviewing these surveys, the Court finds that they are sufficiently related to camera phones, including Samsung's, and the features on those devices, which have a sufficient nexus to the relevant market, the parties, and the alleged infringement.  *See i4i*, 598 F.3d at 856 ("While the data were certainly imperfect, and more (or different) data might have resulted in a 'better' or more 'accurate' estimate in the absolute sense, it is not the district court's role under *Daubert* to evaluate the correctness of facts underlying an expert's testimony.").  Samsung also argues that Benoit's lack of expertise concerning surveys and survey results makes him unqualified to perform this analysis relying on surveys.   Defs.' Mot. JMOL Damages 10–11, ECF No. 615.  The Court does not find that Benoit need be an expert on surveys in order to use them in his analysis.  Indeed, experts frequently rely on surveys and reports that they are not experts on.  This is particularly true when Samsung itself has used and relied on these surveys in the course of its business and when the underlying methodology of the surveys are not at issue.  Thus, Benoit's analysis is not flawed because of his reliance on market research surveys.

Third, Samsung argues that Benoit's application of the NBS was actually an improper 50% rule of thumb that has been rejected by the courts.  *Id.* at 13—14.  Benoit testified that the

NBS only looks to surplus profit, and allows for a variance in dividing the surplus profit where there is an otherwise unquantifiable difference in the bargaining position. The Court finds Benoit's use of NBS was not an improper 50% rule of thumb, but rather based on his belief that because neither party had a stronger negotiating positions, they would have split the profits evenly. Thus, Benoit's analysis is not inherently flawed and unreliable based on his use of NBS. Also, the Court reiterates the Federal Circuit's explanation that a district court should not use *Daubert* "to evaluate the correctness of facts underlying an expert's testimony. Questions about what facts are most relevant or reliable to calculating a reasonable royalty are for the jury. The jury was entitled to hear the expert testimony and decide for itself what to accept or reject." *i4i*, 598 F.3d at 856 (citation omitted).

Based on the foregoing, the Court finds that Benoit's testimony was not flawed and should not have been excluded under *Daubert*. Because it was properly admitted evidence, the jury could rely on Benoit's testimony in making its damages calculation. Finally, the Court finds that Benoit's testimony by itself constitutes legally sufficient evidence to support the jury award.

### 2.  Settlement Licenses

Samsung argues it was error to admit the settlement licenses and therefore, disregarding that evidence, the jury verdict would be unsupported by legally sufficient evidence. Defs.' Mot. JMOL Damages 16–20, ECF No. 615. Specifically, Samsung argues that both the Facebook settlement license and the RIM settlement license were improper evidence under Federal Rules of Evidence 401, 402, and 403, and thus should not have been admitted. *See id.* The Court disagrees. Because the Court has already found Benoit's testimony constitutes sufficient evidence to support the jury award, even if Samsung is correct that these settlement licenses should not have been admitted, Samsung is not entitled to JMOL on damages. Alternatively, and

21

for completeness, the Court finds that these settlement licenses were properly admitted.

In *LaserDynamics*, the Federal Circuit explained its "longstanding disapproval of relying on settlement agreements to establish reasonable royalty damages" but it has "permitted such reliance under certain limited circumstances." *LaserDynamics*, 694 F.3d at 77. In weighing the probative value and unfair prejudice under Federal Rule of Evidence 403, the Court found it improper for the settlement license with RIM for $3 million to be admitted into evidence without allowing Facebook's settlement license of $20 million to be admitted into evidence.[12] *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872–73 (Fed. Cir. 2010) (finding that "the most reliable license in this record arose out of litigation"). Accordingly, under *LaserDynamics* and *ResQNet*, the Court finds it would be improper to exclude the Facebook license or the RIM license, but to allow licenses with other previous defendants.

Samsung also argues that both the Facebook license and the RIM license were not sufficiently comparable to the hypothetical license that Samsung and Summit 6 would have entered into under the *Georgia Pacific* factors. Defs.' Mot. JMOL Damages 16, ECF No. 615. The Federal Circuit has explained that to be "comparable" a license agreement must be "clearly linked to the economic demand for the claimed technology" and should provide relevant information about the value of the license to the patent-in-suit. *ResQNet*, 594 F.3d at 872–73, 869. The Court finds they were sufficiently comparable to be admitted into evidence. Further, Samsung was able to, and actually did, point to dissimilarities between the hypothetical negotiation and the licenses, and the jury was able to weigh the evidence. *See Reeves*, 530 U.S.

---

[12] The Court also notes that Samsung vehemently contested introducing the Facebook license into evidence by filing a motion in limine and renewing their objection the morning of trial; however Samsung never explicitly contested the introduction of the RIM license in any pretrial proceeding and simply "renewed" their objection during trial.

at 150. Accordingly, the Court does not find that these settlement licenses were improperly admitted. These licenses and other damages evidence in the record constitute sufficient evidence supporting the $15 million damages award. Based on the foregoing, the Court **DENIES** Samsung's motion for JMOL on damages.

## IV. INEQUITABLE CONDUCT AND UNENFORCEABILITY

Samsung alleges that the '482 patent is unenforceable due to inequitable conduct. *See generally* Defs.' Post-Trial Br. Unenforceability, ECF No. 617. Samsung argues that during patent prosecution, inventor Scott Lewis and Summit 6 board members Sarah Pate and Peter Yoakum failed to disclose material prior art relating to Point2 and the PUF with the intent to deceive the PTO, thus rendering the patents unenforceable due to inequitable conduct. *See id.* The Court does not agree with Samsung.

### A. Preliminary Issue: Defendants' Motion to Compel Testimony and Communications with Fenwick & West Based Upon Waiver

At the bench trial, Summit 6 questioned Sarah Pate on direct examination and she discussed the work that Fenwick & West performed for Summit 6. Samsung filed a motion to compel, alleging that Pate waived attorney-client privilege as to the 2005 memorandum on Summit 6's privilege log and all communications between Fenwick & West and Summit 6 concerning the '802 patent. *See* Defs.' Mot. Compel, ECF No. 589. Samsung therefore requests that the Court find that there has been a waiver of privilege, the Court permit Samsung to cross-examine Ms. Pate about communications with Fenwick & West concerning the '802 patent, and order the immediate production of certain documents on Summit 6's and Fenwick & West's privilege logs. *Id.* at 2. Summit 6 responds that Pate's testimony did not amount to a disclosure of a privileged communication. Pl.'s Resp. Defs. Mot. Compel 2, ECF No. 600.

23

"[A] client implicitly waives the attorney-client privilege by testifying about portions of the attorney-client communication." *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir. 1999). The law makes clear that disclosure of privileged information waives "all communications that pertain to the same subject matter." *SEC v. Microtune, Inc.*, 258 F.R.D. 310, 317 (N.D. Tex. 2009); *see Nguyen*, 197 F.3d at 208 ("[D]isclosure of any significant portion of a confidential communication waives the privilege as to the whole.").

During the bench trial, Summit 6's counsel was discussing Summit 6's relationship with Fenwick & West and what kind of work the law firm performed for Summit 6. Summit 6's counsel then switched topics to Point 2:

> Q.  How is it then at some point you came or folks at your company came to learn about this company Point2 from Fenwick?
>
> A.  Well, Fenwick & West had conducted prior art searches for us and found them to be clean and then they found – when they received this demand letter, one of their clients from Point2, all they told us was this may be interesting for you and what was interesting for us is that – although we already had coverage within the United States, they had a European and a Canadian.  At the time we filed our original patent, we couldn't afford to file for the European patent and so that might be interesting to us.

In assessing whether this disclosure constituted "any significant portion of a confidential communication," the Court ordered Summit 6 to disclose any documents or communications in their privilege log that Samsung requested in this motion.  Summit 6 provided the Court these documents *in camera*.  After reviewing the *in camera* submission, considering the facts, and applying these facts to the law, the Court concludes that Pate's testimony at trial did not amount to "any significant portion of a confidential communication" that would warrant waiving the privilege as to the rest of the confidential communications.  Accordingly, the Court **DENIES** Samsung's motion to compel.

24

### B.  Legal Standard

"Inequitable conduct resides in failure to disclose material information, or submission of false material information, with an intent to deceive, and those two elements, materiality and intent, must be proven by clear and convincing evidence." *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 872 (Fed. Cir. 1988).  The Federal Circuit has explained: "Intent and materiality are two separate requirements.  A district court should not use a 'sliding scale,' where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa."  *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (citation omitted).

The materiality required to establish inequitable conduct is but-for materiality.  *Id.* at 1291.  "When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art."  *Id.* "In making this patentability determination, the court should apply the preponderance of the evidence standard and give claims their broadest reasonable construction." *Id.* at 1291–92 (citing MPEP §§ 706 (preponderance of the evidence), 2111 (broadest reasonable construction)).

To prove intent in a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference.  *See Molins PLC v. Texatron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995).  In other words, the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew it was material, and made a deliberate decision to withhold it.  *See Therasense*, 649 F.3d at 1290 ("Proving that the applicant knew of the reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive.").  "[A] district court may infer intent from indirect and circumstantial evidence.

25

However, . . . specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'   Indeed, the evidence 'must be sufficient to *require* a finding of deceitful intent in light of all the circumstances.'"   *Id.* (citations omitted).

### C.  Plaintiff's JMOL on Inequitable Conduct

After the jury trial, but before the bench trial, Summit 6 filed a judgment as a matter of law that there can be no inequitable conduct based on the jury's verdict that the patent-in-suit is valid over the Point2 reference.  *See generally* Pl.'s JMOL Inequitable Conduct, ECF No. 565. The Federal Circuit addressed this issue recently and explicitly in *Therasense*.  In explaining the requirement of but-for materiality, the Federal Circuit stated: "However, even if a district court does not invalidate a claim based on a deliberately withheld reference, the reference may be material if it would have blocked patent issuance under the PTO's different evidentiary standards." *Therasense*, 649 F.3d at 1292 (citing MPEP §§ 706 (preponderance of the evidence), 2111 (broadest reasonable construction)).  Accordingly, the Court **DENIES** Plaintiff's Motion for JMOL on Inequitable Conduct.

### D.  Bench Trial on Inequitable Conduct

The Court conducted a bench trial on inequitable conduct and unenforceability for a total of about two days in late April 2013.  After making the following findings of fact and conclusions of law, the Court finds that no inequitable conduct occurred and the patent is not unenforceable.[13]  Because only individuals who have a duty of candor can commit inequitable conduct, the Court must first determine who at Summit 6 had any duty to disclose information to the PTO.  *See Avid Identification Sys., Inc. v. Crystal Imp. Corp.*, 603 F.3d 967, 976 (Fed. Cir.

---

[13] Any finding of fact that should be construed as a conclusion of law is hereby adopted as such.  Any conclusion of law that should be construed as a finding of fact is hereby adopted as such.

26

2010).

### 1.  Duty of Candor

First, Samsung alleges that Scott Lewis, Sarah Pate, and Peter Yoakum each owed a duty of candor to the PTO.  Defs.' Post-Trial Br. Unenforceability 17–23, ECF No. 617.  Summit 6 argues that Sarah Pate and Peter Yoakum owed no duty of candor to the PTO because they were not "substantively involved" in the prosecution of the '482 patent.  Pl.'s Resp. Defs.' Post-Trial Br. Unenforceability 5–15, ECF No. 634.  To resolve this issue, the Court will first determine who in this case has a duty of candor to the PTO.

"Whether the individual involved in the alleged misconduct owed a duty of candor to the PTO is merely a threshold inquiry in the inequitable conduct analysis."  *Avid*, 603 F.3d at 976.  In determining who owes a duty of candor, PTO Rule 56 defines "[i]ndividuals associated with the filing or prosecution of a patent application" as: (1) each named inventor in the application; (2) each attorney or agent who prepares or prosecutes the application; and (3) "every other person who is substantively involved in the preparation or prosecution of the application."  37 C.F.R. § 1.56(c).  The Federal Circuit has held that "substantive involvement" means "that the involvement relates to the content of the application or decisions related thereto, and that the involvement is not wholly administrative or secretarial in nature."  *Avid*, 603 F.3d at 974.

#### a.  Scott Lewis

Both parties have asserted, and the Court agrees, that Scott Lewis has a duty of candor before the PTO.  As a named inventor on the '482 patent, Lewis owed a duty of candor to the PTO under Rule 56.  *See* 37 C.F.R. § 1.56(d); *Avid*, 603 F.3d at 973.

#### b.  Sarah Pate

Samsung argues that Sarah Pate owed a duty of candor because she was "substantively

27

involved" and that involvement went beyond being "wholly administrative or secretarial in nature." Defs.' Post-Trial Br. Unenforceability 21, ECF No. 617. Samsung asserts that Pate was "substantively involved" because she (1) had communications with patent prosecution counsel and Lewis, (2) was on the board of Summit 6, a small company, (3) was responsible for the patent portfolio, and (4) sent and received emails speaking about the progress of the prosecution. *See id.* at 21–24. The Court finds this evidence insufficient to show that Pate's involvement was substantive involvement "relate[d] to the *content* of the application or decisions related thereto." *See Avid*, 603 F.3d at 974 (emphasis added).

Indeed, Pate consistently testified that she was not substantively involved in prosecution and the Court finds her testimony credible. There is no evidence that the nature and contents of her communications with Lewis or prosecution counsel, Duane Kobayashi, were substantive discussions regarding patent prosecution, technology, claim language, or anything related to the content of the application.[14] *See id.* Both Lewis's and Duane Kobayashi's deposition testimony assert that neither of them discussed the contents of the patent with Pate. Also Pate testified, and the evidence supports, that she was merely the board member assigned to follow through and compete patent-related projects. Even though Pate was the CEO of a small company, similar to Dr. Stoddard in *Avid*, who was found to have a duty of candor, that fact alone does not necessitate a finding of substantive involvement in prosecution. At most, Pate's role in patent prosecution was business-related, not substantive. Accordingly, the Court finds that Pate was not "substantively involved" and thus does not owe a duty of candor to the PTO.

---

[14] Summit 6 asserts, and the Court agrees, that it would be improper for the Court to draw an inference from Summit 6's privilege log as to whether Pate was substantively involved in prosecution. *See Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004) ("[N]o adverse inference shall arise from invocation of the attorney-client and/or work product privilege.").

*c. Peter Yoakum*

Samsung argues that Peter Yoakum, a Summit 6 board member, was "substantively involved" in prosecution of the '482 patent. Samsung focuses on Yoakum's March 2006 due diligence analysis concerning Point2's '802 patent, and Yoakum's email regarding his advice that these materials required Summit 6 to spend money to "improve or resuscitate" the '557 patent. Defs.' Post-Trial Br. Unenforceability 21–22, ECF No. 617. The Court disagrees that this evidence relates to substantive involvement in *prosecution*. *See Avid*, 603 F.3d at 974. Although the Point2 materials have become relevant for purposes of this trial, this due diligence regarding the purchase of the '802 patent did not relate to prosecution of the '482 patent. Further, his general advice regarding the patent portfolio does not amount to substantive involvement.

Samsung also argues that Yoakum was an active participant in prosecution because of two isolated instances: (1) Yoakum's email to Lewis regarding a July 10, 2009 Office Action rejecting the claims of the '482 patent and (2)Yoakum's communication with Lewis regarding an interview with the PTO on the '482 patent. Defs.' Post-Trial Br. Unenforceability 22–23, ECF No. 617. These two isolated instances are insufficient to show *substantive* involvement. *See Avid*, 603 F.3d at 974. Accordingly, the Court finds that Yoakum was not "substantively involved," and thus does not owe a duty of candor to the PTO.

Having found that Scott Lewis was the only individual at Summit 6 who owed a duty of candor to the PTO regarding the '482 patent, the Court will now determine whether Samsung established by clear and convincing evidence (1) that the Point2 PUF was but-for material, and (2) that Scott Lewis acted with the required intent to deceive the PTO. *See Therasense*, 649 F.3d at 1290.

29

### 2.  Materiality

In assessing whether the PUF is but-for material, it is important to determine whether it constitutes prior art.  *See id*.  The PUF files and other documents include dates earlier than the '482 patent's priority date.  While these dates may be related to the PUF files and documents, it is unclear when the PUF files were uploaded onto Point2's website, which is necessary to determine when the PUF files were on sale or in public use in the United States.  *See* 35 U.S.C. § 102(b).  Because of this deficiency, the Court cannot say it is more likely than not that, if the patent examiner in the '482 application had been provided with the Point2 materials and had given the claims their broadest reasonable construction, the examiner would have rejected the claims based on these references.  *See Therasense*, 649 F.3d at 1290–92; *Golden Hour Data Sys., Inc. v. emsCharts, Inc.*, No. 2:06–CV–381–JRG, 2012 WL 3494366, at *15 (E.D. Tex. Aug. 15, 2012) (finding a brochure was not but-for material because it was undated and obtained after the patent-in-suit was filed).  Thus, Samsung did not prove by clear and convincing evidence that the Point2 materials would have been but-for material to the '482 claims.

### 3.  Intent

Even if the Point2 materials were but-for material, Samsung did not prove by clear and convincing evidence that (1) Lewis knew these references were but-for material, and (2) he made a deliberate decision to withhold it from the PTO with the specific intent to deceive the PTO.  *See Therasense*, 649 F.3d at 1290.  First, it is unclear whether Lewis knew about the Point2 materials at all.  Even assuming he knew about all of those references, Lewis did not know these references were material.  Indeed, because of the uncertainty of the date the PUF was first in public use in the United States, Lewis could not have actually *known* that the PUF was material.  *See Therasense*, 649 F.3d at 1290 ("A finding that the misrepresentation or omission amounts to

gross negligence or negligence under a 'should have known' standard does not satisfy this intent requirement." (citing *Kingsdown*, 863 F.2d at 876).  Also, there is insufficient evidence to find that Lewis had a specific intent to deceive the PTO.  In light of the plausible good faith explanations provided by Lewis and Summit 6 regarding inability to determine when the PUF was available in the United States, a specific intent to deceive is not "the single most reasonable inference to be drawn from the evidence." *See Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1334 (Fed. Cir. 2011).  Nor is the evidence "sufficient to *require* a finding of deceitful intent in light of all the circumstances." *Therasense*, 649 F.3d at 1290.  Thus, Samsung has failed to prove by clear and convincing evidence that Lewis acted with the necessary intent.

In summary, because Samsung has failed to prove but-for materiality and that Lewis—the only individual with a duty of candor in this case—acted with the requisite intent, the Court does not find the '482 patent unenforceable due to inequitable conduct.[15]

## VI.    DAMAGES

### A.  Plaintiff's Motion for a Compulsory Royalty

In addition to the $15 million jury verdict, Summit 6 moves for a future royalty to compensate it for Samsung's continued infringement after the verdict.   *See* Pl.'s Mot. Compulsory Royalty 1, ECF No. 569.  Summit 6 argues that the jury's verdict only compensated for Samsung's past infringement up to the point of trial.  *See id.*  The parties argue over the

---

[15] Also before the Court is Defs.' Mot. Strike Pl.'s Trial Ex. PX-1003 (ECF No. 604).  This exhibit consists of an email exchange between Summit 6's current counsel and attorneys at Fenwick & West who acted as AdMission and Minotaur's counsel.  This exhibit was introduced by Plaintiff to rebut Samsung's expert's theory that Lewis knew of the Point2 materials because he reviewed files provided from Fenwick & West to Admission in 2008, which Samsung alleges contained the Point2 documents.  Because the Court has already found that Samsung failed to prove inequitable conduct by clear and convincing evidence, and finds that if considered, this exhibit would not change the result, the Court **DENIES** Samsung's motion as moot.

meaning of the jury's addition on the verdict form of the text "lump sum" underlined and written under the $15 million amount.  Summit 6 argues that the jury charge never defined "lump sum," nor did the jury charge specify that it would be through the life of the patent, instead of up to the date of trial.  *Id.* at 2.  Samsung responds that the jury understood that "lump sum" covered both past and future infringement.  Samsung also cited to specific testimony during trial defining the term.  *See* Defs.' Opp'n Pl.'s Mot. Compulsory Royalty 3–10, ECF No. 594.

"A patentee is entitled to 'damages adequate to compensate for infringement, but in no event less than a reasonable royalty.'" *Wordtech Sys. Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010) (quoting 35 U.S.C. § 284).  In assessing a damages award, "a court must ask, '[H]ad the Infringer not infringed, what would [the] Patent Holder[ ] have made?'" *Lucent*, 580 F.3d at 1324 (alterations in original) (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964)).  "A reasonable royalty can be calculated from an established royalty, the infringer's profit projections for infringing sales, or a hypothetical negotiation between the patentee and infringer based on the factors in Georgia–Pacific." *Wordtech*, 609 F.3d at 1319 (citing *Lucent*, 580 F.3d at 1324).  "The hypothetical negotiation 'attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began,' and 'necessarily involves an element of approximation and uncertainty.'" *Id.* at 1319 (quoting *Lucent*, 580 F.3d at 1324–25).  Such a negotiation can result in either a running royalty rate, or a lump-sum royalty payment. *See Lucent*, 580 F.3d at 1325.  "District courts have broad discretion to interpret an ambiguous verdict form, because district courts witness and participate directly in the jury trial process." *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1378 (Fed. Cir. 2010).

In this case, the verdict form under Damages asked: "What sum of money, if any, do you

find from a preponderance of the evidence is adequate to compensate Plaintiff for Defendant's conduct that you found to infringe? Provide the amount, if any, in dollars and cents." *See* Jury Charge 46–47, ECF No. 562.  On the line below this question, the foreman wrote "15,000,000.00 –> $15 MILLION" and underneath the blank line added "LUMP SUM." *Id.* The Court finds that this is an express statement in the verdict that this is award is for a lump sum license.  *See Telecordia Techs.*, 612 F.3d at 1378 ("In the absence of an express statement in the verdict, this court cannot determine whether the jury compensated [plaintiff] for all of [defendant's] infringing activities.").  Throughout trial, "lump sum" was consistently explained by both parties as providing a one-time, single payment for a license for the life of the patent.  Summit 6's expert, Benoit, and Samsung's expert, Martinez, both testified multiple times as to this definition.  Summit 6 argues that the jury charge never gave the jury a specific definition of "lump sum" and thus it is unclear what the jury intended by its inclusion of that term on the verdict form.  Pl.'s Mot. Compulsory Royalty 2, ECF No. 569.  The Court, however, finds that the trial testimony was consistent and abundant such that the jury would understand that "lump sum" would compensate Summit 6 for the life of the patent.  Also, the fact that the jury specifically wrote that language underneath the $15 million amount emphasizes that the jury wanted to ensure their damages amount was clear.[16]  Accordingly, the Court finds that the jury verdict represents the amount of a lump sum license for the life of the patent and compensates

---

[16]  Summit 6 also argues for the first time in its reply brief that precluding the possibility of future relief would deny Summit 6 due process. Pl.'s Reply Defs.' Resp. Pl.'s Mot. Compulsory Royalty, ECF No. 607. Summit 6 specifically argues that because an award of damages is directed at past infringement, it would be improper for the Court to not allow Summit 6 the ability to receive damages in the form of a compulsory royalty for all infringement occurring post-verdict. *Id.*  However, the jury, by writing "lump sum," made clear that this damage amount is to compensate Summit 6 as a one-time payment for the life of the patent. Accordingly, there cannot be any denial of due process because this damage amount inherently compensates plaintiff for both past infringement and future infringement.

Summit 6 for both past and future infringement of the '482 patent.

### B.  Plaintiff's Motion for Pre-Judgment Interest and Post-Judgment Interest

Summit 6 moves for both pre-judgment interest and post-judgment interest.[17]  *See* Pl.'s Mot. Pre-Judgment & Post-Judgment Interest, ECF No. 610.  The parties agree, as does the Court, that post-judgment interest should be based on 28 U.S.C. § 1961.  Accordingly, the only issue remaining is at what rate pre-judgment interest should be calculated. Samsung's argues that any pre-judgment interest should be calculated based on the U.S. Treasury Bill rate, while Summit 6 proposes the Court use the Texas statutory rate.  *See* Pl.'s Mot. Pre-Judgment & Post-Judgment Interest, ECF No. 610; Defs.' Opp'n, ECF No. 643.

In patent infringement cases, "prejudgment interest should be awarded under [35 U.S.C.] § 284 absent some justification for withholding such an award." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983).  The Federal Circuit has given district courts great discretion when determining the applicable interest rate for an award of prejudgment interest.  *See Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997).  Samsung argues that Summit 6's failure to present any evidence in its motion justifying a higher rate requires that the Court use the U.S. Treasury Bill rate.  Defs.' Opp'n 2, ECF No. 643.  Summit 6 argues that the U.S. Treasury bill rate is now "deflated, out of touch with reality, and fails to even roughly approximate what a company may have earned if it invested elsewhere."  Pl.'s Reply Defs.' Opp'n Pl.'s Mot. Pre-Judgment & Post-Judgment Interest 2, ECF No. 610.  Summit 6 also explains that other district courts have recognized the recent inadequacy of the U.S. Treasury bill rates to adequately compensate Plaintiff.  *Id.* at 2–3.  Summit 6 argues the Texas statutory rate in

---

[17]  Samsung's response mainly contains references to their pending JMOLs, which the Court has denied in relevant part, *see supra*, and thus these arguments lack merit.  *See* Defs.' Opp'n, ECF No. 643.

property damage cases is more appropriate because patents are personal property. *Id.* at 4 (citing 35 U.S.C. § 261 ("[P]atents shall have the attributes of personal property.")).   Summit 6 also points to other district courts who have used the Texas statutory rate for pre-judgment interest. *See id.* (citing *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 518 F. Supp. 2d 876, 896–97 (S.D. Tex. 2007)).   In Texas, the statutory prejudgment interest rate for property damage cases is "the postjudgment interest rate applicable at the time of judgment."   Tex. Fin. Code § 304.103. The Texas postjudgment interest rate is currently 5%.   *See* Tex. Fin. Code § 304.003(c).

After careful review of the parties' positions, the Court finds that pre-judgment interest should be calculated using the state statutory rate of 5%, compounded annually.[18]   Post-judgment interest shall be calculated at the rate set by 28 U.S.C. §1961 as of the date judgment is entered in this action, compounded annually.

## V.    CONCLUSION

For the aforementioned reasons, Plaintiff's Motion for Pre-Judgment Interest and Post-Judgment Interest (ECF No. 609) is **GRANTED**; Samsung Defendants' Motion for JMOL 1: Non-Infringement—No Acts of Direct or Indirect Infringement (ECF No. 611) is **GRANTED in part** and **DENIED in part**, Samsung Defendants' Motion to Strike Plaintiff's Trial Exhibit

---

[18]   In its reply, Summit 6 "in an effort to narrow the issues for the Court" agreed to quarterly compounding of pre-judgment interest.  Pl.'s Reply Defs.' Opp'n Pl.'s Mot. Pre-judgment & Post-Judgment Interest 2, ECF No. 610.   However, they mistakenly assert that Samsung argues for the interest to be compounded quarterly no matter which rate the Court chooses to apply.  Samsung does assert a figure based on quarterly compounding, but uses the U.S. Treasury Bill rate, which is significantly lower than the 5% asserted by Summit 6.  It is unclear to the Court why Summit 6 believes that Samsung "agrees" to quarterly compounding, especially when the total amount in interest would be over $100,000 more than if the Court compounded the interest annually.  *Compare* Pl.'s Mot. Pre-judgment & Post-Judgment Interest 5, ECF No. 610 (Prejudgment interest "should be awarded in the amount of $2,090,334, which is 5% prejudgment interest compounded annually."), *with* Pl.'s Reply Defs.' Opp'n Pl.'s Mot. Pre-judgment & Post-Judgment Interest 5, ECF No. 610 (Interest compounded quarterly . . . using the proper Texas statutory rate, totals $2,131521.).  Accordingly, the Court finds that Samsung could not have agreed to quarterly compounding of pre-judgment interest using the 5% rate, and thus will instead compound the amount annually.

PX-1003 (ECF No. 603) is **DENIED as moot**, and all other motions are **DENIED.**   The Final

Judgment will be issued in a separate Order.

Reed O'Connor
UNITED STATES DISTRICT JUDGE